Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONSERVATION NORTHWEST et al., | Case No. C08-1067-JCC |
| Plaintiffs, | **INTERVENOR'S OBJECTION TO SETTLEMENT AGREEMENT** |
| v. | |
| MARK E. REY et al., | |
| Defendants, | |
| and | |
| D.R. JOHNSON LUMBER COMPANY, | |
| Defendant-Intervenor. | |

Intervenor's Objection to Settlement Agreement - Page 1
 Case No. C08-1067-JCC

## I. INTRODUCTION

Defendant intervenor D.R. Johnson Lumber Company urges the court to require that the terms of the settlement agreement between federal defendants and plaintiffs be adopted through the plan amendment process of the National Forest Management Act (NFMA) and the Federal Land Policy and Management Act (FLPMA) and the public participation procedures of the National Environmental Policy Act (NEPA) before its terms become effective. The 14 page settlement agreement, which was a year in the making, modifies the list of species subject to survey and manage contained in the 2001 Survey and Manage Record of Decision (2001 ROD). The settlement agreement also modifies the survey and manage requirements if certain restrictions are imposed on the use of resources in portions of Matrix land - the area of the Northwest Forest Plan where most of the timber was to be harvested. These significant changes in the terms and conditions of the Plan were made without any public involvement and without a plan amendment. The court should require the Forest Service and the Bureau of Land Management (BLM) to involve the public under NEPA and amend their plans under NFMA and FLPMA before the settlement agreement becomes effective.

## II. ARGUMENT

Changes to the survey and manage program must comply with NFMA, FLMPA, and NEPA. The Ninth Circuit in <u>Klamath Siskiyou Wildlands Center v. Boody</u>, 468 F.3d 549 (9th Cir. 2006), concluded that BLM had to first amend the Northwest Forest Plan to make changes in the survey and manage program resulting from annual species reviews (ASRs) and BLM also was required to comply with NEPA. The analysis in <u>Boody</u> applies equally to the current changes in the survey and manage program proposed under the settlement agreement. Certainly, BLM and the Forest Service can make these changes, but they must do so in full compliance with NFMA, FLPMA, and NEPA

and their implementing regulations.  The Ninth Circuit emphasized that for changes to the survey and manage program, "under FLPMA, if BLM wishes to change the resource management plan, it can only do so by formally amending the plan pursuant to 43 C.F.R. § 1610.5-5." Id. at 556. Section 43 C.F.R. § 1610.5-5 requires that:

> ... An amendment shall be initiated by the need to consider monitoring and evaluation findings, new data, new or revised policy, a change in circumstances or a proposed action that may result in a change in the scope of resource uses or a change in the terms, conditions and decisions of the approved plan. An amendment shall be made through an environmental assessment of the proposed change, or an environmental impact statement, if necessary, public involvement as prescribed in § 1610.2 of this title, interagency coordination and consistency determination as prescribed in § 1610.3 of this title and any other data or analysis that may be appropriate....

After reviewing 43 C.F.R. § 1610.5-5 the court concluded that "BLM *must* amend a management plan when an action is proposed that changes either 'the scope of resource uses' or the 'terms, conditions and decisions' of the plan." Id. (original emphasis).  The court rejected BLM's argument that the survey and manage changes were only "plan maintenance" under 43 C.F.R. § 1610.5-4.  Plan maintenance is defined as changes made:

> as necessary to reflect minor changes in data. Such maintenance is limited to further refining or documenting a previously approved decision incorporated in the plan. Maintenance shall not result in expansion in the scope of resource uses or restrictions, or change the terms, conditions, and decisions of the approved plan. Maintenance is not considered a plan amendment and shall not require the formal public involvement and interagency coordination process described under §§ 1610.2 and 1610.3 of this title or the preparation of an environmental assessment or environmental impact statement.

43 C.F.R. § 1610.5-4.

The court held that shifting species from one survey category to another survey category or dropping species from the survey and manage program altogether are changes of a "term, condition, or decision" of a resource management plan which "alone are sufficient to require compliance with § 1610.5-5." Boody, 468 F.3d at 558.  Here the settlement agreement terms do both – shift species between categories and drop species from the survey and manage list. The settlement agreement also

Intervenor's Objection to Settlement Agreement - Page 3
Case No. C08-1067-JCC

modifies the survey and manage requirements if certain agreed restrictions are imposed on the use of resources.  For example, within the "Dry Forest" vegetation type, which encompasses a vast area of Northern California and Southern Oregon, the settlement agreement provides for a five acre, instead of ten acre, red tree vole preserve.  However, the smaller preserve will apply only if, among other things, the following resource use restrictions are applied:

> The project retains all live fire tolerant species . . . greater than 20 inches dbh, and all other species greater than 25 inches dbh and greater than 120 years old when measured at breast height; and

> The project reduces overall stand densities to an average of more than 30% of maximum SDI measured across treatment units; and

> In nesting, roosting, and foraging habitat for the northern spotted owl, the project retains structural conditions and at least 60% canopy cover; and

> In dispersal-only habitat for the northern spotted owl, and non-owl habitat, the project retains structural conditions and at least 40% canopy cover.

Settlement Agreement at 6-10.

The detailed restrictions on how forests in Matrix must be treated under certain exemptions and the modification of the size of the red tree vole preserves are "changes in resource uses" within the meaning of the plan amendment provision.  43 C.F.R. § 1610.5-5.  At minimum, these changes are new "terms and conditions" of the Northwest Forest Plan that compel a plan amendment.  The Ninth Circuit concluded in Boody that the plan amendment and plan maintenance provisions are complementary and taken together:

> [T]hey ensure that whenever resource management plans are changed in any meaningful way, the changes must be made via amendment (i.e., supported by scientific environmental analysis and public disclosure). This is consistent with FLPMA's requirement that BLM ensure the 'views of the general public' and 'third-party participation' are adequately incorporated into the land planning process. See 43 U.S.C. § 1701(a)(5); 43 C.F.R. § 1610.2. This interpretation is also supported by provisions of FLPMA that require BLM to manage

Intervenor's Objection to Settlement Agreement - Page 4
Case No. C08-1067-JCC

public lands in accordance with resource management plans once they have been established. See 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3(a)

Boody, 468 F.3d at 557.  The settlement agreement changes the Northwest Forest Plan in a "meaningful way" and must be made by amendment.

In amending its resource management plans, BLM must comply with NEPA and prepare an environmental assessment (EA) or environmental impact statement (EIS) to amend the plan.  The Ninth Circuit emphasized that "when amending a resource management plan-as defined in 43 C.F.R. § 1610.5-5 - an agency must perform supplemental NEPA analysis. Because the ASR [survey and manage] Decisions trigger the § 1610.5-5 requirements under FLPMA, they also trigger the NEPA requirements under 40 C.F.R. § 1502.9(c)(1)(i)." Id. at 561.

Similarly, the NFMA implementing regulations also require that changes to a plan must be made through plan amendments and with public participation.  The NFMA planning regulations are found at 36 C.F.R. § 219.8 (2000), see 74 Fed. Reg. 67059, 67065 (Dec. 18, 2009) (explaining the reinstatement of the 2000 planning rule).  The regulations state that "[a] plan amendment may add, modify, or rescind one or more of the decisions of a plan . . . . In developing an amendment, the responsible official must provide opportunities for collaboration." 36 C.F.R. § 219.8(a).  In addition, under the regulations, plan amendments require compliance with NEPA:

> (b) *Environmental review of a proposed plan amendment*.  For each proposal for a plan amendment, the responsible official must complete appropriate environmental analyses and public involvement in accordance with Forest Service NEPA procedures.

36 C.F.R. § 219.8 (b).

The agencies know how to draft a settlement agreement that includes terms to comply with the plan amendment and public participation procedures of NFMA, FLPMA, and NEPA.  For example, in Douglas Timber Operators v. Sec. of Agric. and Sec. of Interior, No. 01-CV-6378-AA (D. Or.), Douglas Timber Operators, the Association O & C Counties, and the agencies reached an

Intervenor's Objection to Settlement Agreement - Page 5
Case No. C08-1067-JCC

agreement in which alternatives to the survey and manage mitigation measures and standards and guidelines would be reconsidered, including replacing the survey and manage mitigation requirements with existing agency special status species programs. Declaration of Scott W. Horngren Exhibit 1. Paragraph 1 of the agreement stated:

> BLM and the Forest Service will supplement the 2000 FSEIS to address the alleged statutory violations by considering alternatives that include replacing the survey and manage mitigation requirements with existing Forest Service and BLM special status species programs to achieve the goals of the Northwest Forest Plan through a more streamlined process on the following schedule:
>
> a.  Publication of the Draft Supplemental EIS: May 9, 2003
>
> b.  Publication of Final Supplemental EIS: October 24, 2003.

Id.

Unlike the settlement agreement in this case, where its terms will affect the substance of the Northwest Forest Plan once the court signs the order approving the settlement agreement, the prior settlement agreement required the agencies to follow the plan amendment process before any change to the Northwest Forest Plan was effective. Similarly, in American Forest Resource Council v. Clarke, Civ. No. 94-1031-TPJ (D.D.C. 2003), a settlement agreement involving management of the O & C lands provided that any changes to the plan resulting from the agreement were to be made through the plan amendment process. Horngren Decl. Ex. 2.

Requiring these procedures for public participation will also allow intervenor D.R. Johnson Lumber Company to participate, since it was essentially excluded from the settlement negotiations despite repeated requests to participate. Dkt. 73. D.R. Johnson's exclusion from settlement process is contrary to the Federal Rules of Civil Procedure under 24(a) which D.R. Johnson exercised its right to intervene to fully participate in the case. As D.R. Johnson has previously explained, because settlement inevitably involves the remedies in the case, D.R. Johnson should have been included in

Intervenor's Objection to Settlement Agreement - Page 6
Case No. C08-1067-JCC

any such discussions as the intervenors were in <u>Forest Guardians v. BLM</u>, 188 F.R.D. 389, 397 (D. N.M. 1999).

### III.   CONCLUSION

Intervenor respectfully requests that the court require federal defendants to comply with the procedural requirement of NFMA, FLPMA, and NEPA before the terms of the settlement agreement are implemented.

Dated:  March 22, 2011.          Respectfully submitted,

/s/ Scott W. Horngren
Scott W. Horngren (OSB #880604)
American Forest Resource Council
5100 SW Macadam, Suite 350
Portland, OR 97239
Tel: (503) 222-9505
Fax: (503) 222-3255
shorngren@amforest.org

Shay S. Scott (WSB #23760)
Haglund Kelley Jones & Wilder LLP
200 SW Market, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777
Fax: (503) 225-1257
sscott@hk-law.com

Attorneys for Defendant-Intervenor

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Intervenor's Objection to Settlement Agreement - Page 7
Case No. C08-1067-JCC