Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CONSERVATION NORTHWEST et al.,

   Plaintiffs,

   v.

HARRIS SHERMAN et al.,

   Defendants,

   and

D.R. JOHNSON LUMBER COMPANY,

   Defendant-Intervenor.

CASE NO. C08-1067-JCC

**DEFENDANTS' RESPONSE TO DEFENDANT-INTERVENOR'S OBJECTIONS TO SETTLEMENT AGREEMENT**

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement
Case No. C08-1067-JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone: 206-553-7970

# **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................1

ANALYSIS..........................................................................................................................2

    A.    The Court Should Enter the Settlement Agreement as an Equitable Remedy.........2

        1.    Settlements Are Favored as Vehicles to Resolve Disputes .........................2

        2.    The Court Has Equitable Authority to Enter the Settlement Agreement.....3

        3.    Entry of the Settlement Agreement Furthers the Policy in Favor of Amicable Resolution of Litigation ................................................................................5

        4.    The Settlement Is Fair, Reasonable, Consistent with Statutes, and in the Public Interest.........................................................................................................5

    B.    <u>Boody</u> and <u>Douglas Timber Operators</u> Do Not Require NEPA Analysis or Further Plan Amendment Procedures Before the Settlement Agreement Can Take Effect ........................................................................................................................7

    C.    Valid Portions of the 2007 SEIS Encompass the Settlement's Environmental Effects and Plan Amendment Procedures Were Followed in Issuing the 2007 RODs ........................................................................................................................9

        1.    NEPA Analysis and Public Participation Related to the New Exemptions ................................................................................................9

        2.    NEPA Analysis and Public Participation Related to the Revised Species List .............................................................................................................10

CONCLUSION..................................................................................................................12

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement  
Case No. C08-1067-JCC

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, WA  98101-1271  
Telephone: 206-553-7970

i

# TABLE OF AUTHORITIES

## CASES

Ahern v. v. Cent. Pac. Freight Lines,
 946 F.2d 47 (9th Cir. 1988) ..................................................................................................2

Alaska Ctr. for Env't v. Browner,
 20 F.3d 981 (9th Cir. 1994) ..................................................................................................3

Arizona. v. California,
 530 U.S. 392 (2000).............................................................................................................12

Arizona v. Nucor Corp.,
 825 F. Supp. 1452 (D. Ariz. 1992) ....................................................................................5, 6

Callie v. Near,
 829 F.2d 888 (9th Cir. 1987) ................................................................................................5

Citizens for Better Forestry v. USDA,
 481 F. Supp. 2d 1059 (N.D. Cal. 2007) ............................................................................ 3-4

Dacanay v. Mendoza,
 573 F.2d 1075 (9th Cir. 1978) ..............................................................................................5

Douglas Timber Operators, Inc. v. Salazar,
 Civ. No. 09-1704, 2011 WL 1195848 (D.D.C. March 31, 2011)........................................8

Fla. Power & Light Co. v. Lorion,
 470 U.S. 729 (1985)...............................................................................................................3

Forest Guardians v. BLM,
 188 F.R.D. 389 (D. N.M. 1999)............................................................................................6

High Sierra Hikers Ass'n v. Blackwell,
 390 F.3d 630 (9th Cir. 2004) ................................................................................................4

Home Builder Ass'ns of N. Cal. v. Norton,
 293 F. Supp. 2d 1 (D.D.C. 2002).........................................................................................7

Idaho Farm Bureau v. Fed'n v. Babbitt,
 58 F.3d 1392 (9th Cir. 1995) ................................................................................................4

Idaho Watersheds Proj. v. Hahn,
 307 F.3d 815 (9th Cir. 2002) ................................................................................................4

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement
Case No. C08-1067-JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone: 206-553-7970

ii

1  In re Acushnet River & New Bedford Harbor,
        712 F. Supp. 1019 (D. Mass. 1989) ..........................................................................5
2

3  In re City Equities Anaheim, Ltd.,
        22 F.3d 954 (9th Cir. 1994) .......................................................................................5
4

5  Klamath Siskiyou Wildlands Ctr. v. Boody,
        468 F.3d 549 (9th Cir. 2006) .................................................................................3, 7

6  Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland,
7       478 U.S. 501 (1986)...................................................................................................6

8  N. Cheyenne Tribe v. Norton,
        503 F.3d 836 (9th Cir. 2007) .....................................................................................4
9

10 Nat'l Wildlife Fed'n v. Espy,
       45 F.3d 1337 (9th Cir. 1995) .....................................................................................4
11

12 Nw. Ecosystem Alliance v. Rey,
       No. 04-844, 2006 WL 1075213 (W.D. Wash. Oct. 10, 2006).................................2, 4
13

14 Officers for Justice v. Civil Serv. Comm'n,
       688 F.2d 615 (9th Cir. 1982) .....................................................................................3

15 Paulsen v. Daniels,
       413 F.3d 999 (9th Cir. 2005) .....................................................................................3
16

17 SEC v. Randolph,
       736 F.2d 525 (9th Cir. 1984) .....................................................................................2
18

19 Sam Fox Publ'g Co. v. United States,
       366 U.S. 683 (1961)...................................................................................................2
20

21 Sierra Club, Inc. v. Elec. Control Designs, Inc.,
       909 F.2d 1350 (9th Cir. 1990) ...................................................................................3

22 Turtle Island Restoration Network v. U.S. Dep't of Commerce,
       Civ. Nos. 09-00598, 10-00044, 2011 WL 344117 (D. Haw. Jan. 31, 2011) ...........6, 7
23

24 United States v. Bechtel Corp.,
       648 F.2d 660 (9th Cir. 1981) .....................................................................................3
25

26 United States v. Cannons Eng'g Corp.,
       720 F. Supp. 1027 (D. Mass. 1989), *aff'd*, 899 F.2d 79 (1st Cir. 1990) ...................2, 5-6
27

28

1  United States v. Montrose Chem. Corp. of Cal.,
       50 F.3d 741 (9th Cir. 1995) .................................................................................. 2-3, 6
2
3  United States v. Oregon,
       913 F.2d 576 (9th Cir. 1990) ........................................................................................3
4
   W. Oil & Gas Ass'n v. EPA,
5      633 F.2d 803 (9th Cir. 1980) ........................................................................................4

6  Weinberger v. Romero-Barcelo,
7      456 U.S. 305 (1982) ......................................................................................................3

8                                          **STATUTES**
   5 U.S.C. § 703 ......................................................................................................................4
9
10 5 U.S.C. § 706(2) .................................................................................................................3

11 16 U.S.C. §§ 528-31 ............................................................................................................7

12 16 U.S.C. § 1501..................................................................................................................7

13 16 U.S.C. § 1601..................................................................................................................1
14
   42 U.S.C. § 4321..................................................................................................................1
15
16 43 U.S.C. §§ 1181a-1181j....................................................................................................7

17 43 U.S.C. §§ 1701-87 ......................................................................................................1, 7

18 43 U.S.C. § 1701 (a)(5)........................................................................................................1

19                                         **REGULATIONS**
20 36 C.F.R. § 219.8.................................................................................................................1

21 43 C.F.R. § 1610.2...............................................................................................................1

22

23

24

25

26

27

28

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement         UNITED STATES ATTORNEY
Case No. C08-1067-JCC                                                700 Stewart Street, Suite 5220
                                                                     Seattle, WA  98101-1271
                                   iv                                Telephone: 206-553-7970

## INTRODUCTION

Federal Defendants hereby respond to Defendant-Intervenor D.R. Johnson Lumber Co.'s Objection (Dkt. No. 83) to the Settlement Agreement submitted by Plaintiffs and Defendants on March 4, 2011 (Dkt. No. 81-1). Intervenor objects to the Settlement Agreement on the grounds that before the settlement becomes effective, the Forest Service and Bureau of Land Management ("BLM") (collectively, "the Agencies") must do the following: prepare an environmental analysis under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*; provide an opportunity for public participation; and amend their plans under the National Forest Management Act ("NFMA"), 16 U.S.C. § 1601 *et seq.*, and Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1787. These arguments lack merit. The Court, after finding NEPA violations regarding certain aspects of the Agencies' 2007 Supplemental Environmental Impact Statement ("2007 SEIS"), has broad equitable authority to enter this Settlement Agreement as a remedy, and the judicial act of entering the settlement is not subject to NEPA or public comment requirements. In addition, the analysis in the 2007 SEIS encompasses the environmental effects of the Settlement Agreement, and the settlement does not rely on any of the portions of the 2007 SEIS that the Court found inadequate. The Agencies provided opportunities for public comment and followed plan amendment procedures under FLPMA and NFMA in the course of issuing the 2007 RODs. See 43 U.S.C. § 1701 (a)(5); 43 C.F.R. § 1610.2; 36 C.F.R. § 219.8(2000). Moreover, future NEPA analysis and opportunities for public comment will be provided at a site-specific level for any projects that rely on the terms of the Settlement Agreement. The settlement is a fair and reasonable resolution of the remedy issues, consistent with statutes, and is in the public interest. Accordingly, the Court should enter the Settlement Agreement over Intervenor's Objection.

## BACKGROUND

On December 17, 2009, this Court issued a decision that found in favor of Plaintiffs on certain of their NEPA claims and found in favor of Federal Defendants on other NEPA issues. Memorandum Opinion at 15-34 (Dkt. No. 65). The Court's merits decision did not enter any remedy. Id. at 36. The Court allowed the parties time to attempt to settle the remedy issues.

After engaging in settlement negotiations regarding an appropriate remedy, Plaintiffs and

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement
Case No. C08-1067-JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone: 206-553-7970

1

Defendants filed a Stipulation and [Proposed] Order and attached Settlement Agreement (Dkt. No. 81) on March 4, 2011. Under the settlement, Plaintiffs would dismiss this action with prejudice, and the 2007 Records of Decision ("2007 RODs") would be set aside. See Agreement, Section I.A; Proposed Stip. & Order. The 2001 ROD, which is the last valid Survey and Manage decision, would be reinstated as modified by the settlement. See Agreement, Section I.B. The 2007 SEIS will not be withdrawn. The settlement leaves in place the stipulated exemptions previously entered by Judge Pechman in Northwest Ecosystem Alliance v. Rey, No. 04-844-MJP, Dkt. No. 109 (W.D. Wash. Oct. 10, 2006). See Agreement, Section III. Under the settlement, the list of species to which the Survey and Manage standards and guidelines apply would be narrowed by approximately 80 species from the more extensive list in the 2001 ROD. See Agreement, Section II & Attach. 1. Also, the settlement allows the Agencies to proceed in the future with certain types of projects without first conducting pre-disturbance surveys if those projects fit within the scope of new exemptions. See Agreement, Section IV. The Agencies are not required to use these exemptions in planning future projects and can carry forward projects that do not rely on any of the exemptions by complying with Survey and Manage. Additionally, Plaintiffs will be paid $207,406.25 in satisfaction of their claims for attorneys' fees and costs. See Agreement, Section V.

## ANALYSIS

**A. The Court Should Enter the Settlement Agreement as an Equitable Remedy**

1. Settlements Are Favored as Vehicles to Resolve Disputes

There is a "strong policy in favor of voluntary settlement of litigation." United States v. Cannons Eng'g Corp., 720 F. Supp. 1027, 1035 (D. Mass. 1989), aff'd, 899 F.2d 79 (1st Cir. 1990); see Ahern v. v. Cent. Pac. Freight Lines, 946 F.2d 47, 48 (9th Cir. 1988). "That policy has particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." Cannons, 899 F.2d at 84 (citing SEC v. Randolph, 736 F.2d 525, 529 (9th Cir. 1984)); United States v. Montrose Chem. Corp. of Cal., 50 F.3d 741, 746 (9th Cir. 1995); see generally Sam Fox Publ'g Co. v. United States, 366 U.S. 683, 689 (1961) (absent malfeasance or bad faith, courts are not to "assess the wisdom of the Government's judgment in negotiating and accepting . . . [a] consent decree"). The balancing of competing

interests reflected in a proposed decree to which the United States is a party "must be left, in the first instance, to the discretion of the Attorney General." United States v. Bechtel Corp., 648 F.2d 660, 666 (9th Cir. 1981). While a settlement agreement is at issue here, principles relevant in the consent decree context are useful to demonstrate that the Court should approve this Settlement Agreement. A consent decree should be entered where it is fundamentally fair, reasonable, and does not violate the law or public policy. See, e.g., Montrose, 50 F.3d at 746; United States v. Oregon, 913 F.2d 576, 580 (9th Cir. 1990); Sierra Club, Inc. v. Elec. Control Designs, Inc., 909 F.2d 1350, 1355 (9th Cir. 1990). The Court's inquiry is not directed to whether the Court itself would have reached particular settlement terms, but whether the settlement is a reasonable compromise and otherwise in the public interest. Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

### 2. The Court Has Equitable Authority to Enter the Settlement Agreement

The Court has inherent equitable authority to make a remedy decision by entering the settlement, which would resolve the pending litigation. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."); Alaska Ctr. for Env't v. Browner, 20 F.3d 981, 986 (9th Cir. 1994) ("[C]ourt has broad latitude to fashion an equitable remedy when necessary to remedy an established wrong.").

When a court finds that an agency action was taken in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), it has several equitable remedies available, including vacatur, remand to the agency, or the reinstatement of the prior regulatory or management scheme. See 5 U.S.C. § 706(2) (authorizing the setting aside of unlawful agency action); Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) (if record does not support agency's action or agency has not considered all relevant factors, "the proper course, except in rare circumstances, is to remand to the agency"); Paulsen v. Daniels, 413 F.3d 999, 1008 (9th Cir. 2005) (after enjoining invalid rule, court reinstated pre-existing rule); Klamath Siskiyou Wildlands Ctr. v. Boody, 468 F.3d 549, 562 (9th Cir. 2006) (setting aside 2001 and 2003 Annual Species Reviews ("ASR") for red tree vole and reinstating the red tree vole designations in the 2001 ROD); Citizens for Better Forestry v. USDA, 481 F. Supp. 2d 1059, 1100 (N.D. Cal. 2007) (enjoining invalidated rule and remanding for agency

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement  
Case No. C08-1067-JCC

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, WA 98101-1271  
Telephone: 206-553-7970

3

1  to determine what prior rule should be reinstated).  A court can also issue declaratory relief without
2  setting aside invalidated agency action.  See 5 U.S.C. § 703 (authorizing suit for declaratory or
3  injunctive relief); Nat'l Wildlife Fed'n v. Espy, 45 F.3d 1337, 1343 (9th Cir. 1995) ("Although the
4  district court has power to do so, it is not required to set aside every unlawful agency action.  The
5  court's decision to grant or deny injunctive or declaratory relief under the APA is controlled by
6  principles of equity.").  When the equities favor doing so, courts have allowed an agency rule or
7  decision found to be legally deficient to remain in place while the matter is remanded.  See Idaho
8  Farm Bureau v. Fed'n v. Babbitt, 58 F.3d 1392, 1405 (9th Cir. 1995) ("[W]hen equity demands, the
9  regulation can be left in place while the agency follows the necessary procedures."); W. Oil & Gas
10 Ass'n v. EPA, 633 F.2d 803, 813 (9th Cir. 1980) ("[G]uided by authorities that recognize that a
11 reviewing court has discretion to shape an equitable remedy, we leave the challenged designations in
12 effect.").  Indeed, courts have allowed certain actions to proceed, in whole or in part, pending the
13 completion of further court-required NEPA review.  See, e.g., N. Cheyenne Tribe v. Norton, 503
14 F.3d 836, 844-45 (9th Cir. 2007); High Sierra Hikers Ass'n v. Blackwell, 390 F.3d 630, 638, 642-43
15 (9th Cir. 2004); Idaho Watersheds Proj. v. Hahn, 307 F.3d 815, 833-34 (9th Cir. 2002).

16         In analogous circumstances in litigation concerning the 2004 ROD, Judge Pechman exercised
17 the court's equitable remedial powers when she first entered a remedy order that set aside the 2004
18 ROD, enjoined a category of projects to which the 2004 ROD applied, and reinstated the 2001 ROD
19 including the modifications to species designations made through the ASR process, see Nw.
20 Ecosystem Alliance, No. CV-04-844-P, Order (Dkt. No. 95) (W.D. Wash. Jan. 9, 2006), and then
21 later approved the stipulated exemptions that modified her injunction order.  Nw. Ecosystem
22 Alliance, No. 04-844-MJP, Dkt. No. 109 (W.D. Wash. Oct. 10, 2006).  The timber industry
23 intervenors in Northwest Ecosystem Alliance, who were represented by the same counsel that
24 represents D.R. Johnson in the instant case, agreed to the stipulated exemptions in the 2004 ROD
25 litigation without raising any NEPA, FLPMA, or NFMA issues in connection with that settlement.
26 The stipulated Pechman exemptions were not subject to additional NEPA analysis, plan amendment
27 processes, or further public input.  Those exemptions have not been challenged subsequently as
28 requiring additional steps under NEPA, FLPMA, or NFMA.  Nor have any projects relying on the

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement
Case No. C08-1067-JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA  98101-1271
Telephone: 206-553-7970

4

Pechman exemptions been challenged on the basis that further NEPA, FLPMA, or NFMA processes were required before the exemptions could be used in project planning. Thus, Intervenor maintains an inconsistent position when it argues now that the Settlement Agreement in this case cannot be entered until the Agencies conduct NEPA analysis and plan amendment procedures.

### 3. Entry of the Settlement Agreement Furthers the Policy in Favor of Amicable Resolution of Litigation

The Court's approval of the Settlement Agreement would further "the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation." Dacanay v. Mendoza, 573 F.2d 1075, 1078 (9th Cir. 1978); see In re City Equities Anaheim, Ltd., 22 F.3d 954, 957 (9th Cir. 1994); Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987); Cannons, 720 F. Supp. at 1036. The public policy favoring the resolution of litigation by settlement is particularly strong in environmental cases. See In re Acushnet River & New Bedford Harbor, 712 F. Supp. 1019, 1029 (D. Mass. 1989) ("Congressional purpose is better served through settlements which provide funds to enhance environmental protection, rather than the expenditure of limited resources on protracted litigation."). Indeed, by allowing the parties time to negotiate, the Court directly encouraged voluntary settlement. If the Court enters the settlement, no further briefing on remedy would be needed. The Survey and Manage mitigation measures have already been the subject of extensive litigation over many years. Resolving the remedy issue here without further litigation would conserve the resources of the parties and the Court and serve the public interest.

### 4. The Settlement Is Fair, Reasonable, Consistent with Statutes, and in the Public Interest

While Intervenor raises no objection on fairness grounds, a brief review of the negotiation process and settlement terms confirms that the Settlement Agreement is fair, reasonable, and consistent with the relevant statutes. Accordingly, the Court should approve the agreement.

There is no doubt that the settlement is procedurally fair. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." Cannons, 899 F.2d at 86; see Ariz. v. Nucor Corp., 825 F. Supp. 1452, 1456 (D. Ariz. 1992). A settlement is entitled to deference when it is negotiated at arm's length by

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement  
Case No. C08-1067-JCC

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, WA 98101-1271  
Telephone: 206-553-7970

5

experienced counsel with adequate information to evaluate the strengths and weaknesses of the case. Montrose, 50 F.3d at 746; Cannons, 899 F.2d at 84, 87. The Settlement Agreement is the result of approximately ten months of extensive, vigorous, arm's length negotiations between the parties. The parties were represented by counsel, and some meetings were aided by a neutral facilitator. The good faith negotiations conducted in this manner show that the settlement is procedurally fair.[1]

The Settlement Agreement is also substantively fair and reasonable, embodying a carefully negotiated compromise. See Turtle Island Restoration Network v. U.S. Dep't of Commerce, 2011 WL 344117, at *11-13 (D. Haw. Jan. 31, 2011). The settlement reflects the limited nature of the violations that the Court found. It sets forth a remedy that allows the Agencies to continue important land management programs, while addressing the Court's concerns. The settlement fairly reflects the challenges the parties would face in any remedy litigation. The Settlement Agreement is in no way a complete overhaul of the Northwest Forest Plan or the Survey and Manage mitigation measures. Instead, it reinstates the 2001 ROD, with certain modifications. The Settlement Agreement ensures that the Pechman exemptions remain in place and carves out discrete activities, many of which are restoration-oriented and have beneficial ecological objectives, for which the Survey and Manage requirements are obviated or lessened. The new exemptions give the Agencies greater flexibility in conducting hazardous fuels treatments in the Wildlands Urban Interface, thus furthering the goals of the Healthy Forests Restoration Act, 16 U.S.C. § 1501 et seq. See, e.g.,

---

[1] The fact that the negotiations were not open to the public, or that Intervenor was not at the negotiating table, see Intv. Obj. at 6, does not mean that negotiations were not fairly conducted. See Nucor, 825 F. Supp. at 1458 (private negotiations are appropriate provided they are conducted in good faith). The United States may engage in confidential negotiations, just as any other party. Cannons, 899 F.2d at 93. "[T]he Government need not allow third parties to participate in settlement negotiations." Turtle Island, 2011 WL 344117, at *14. An intervenor cannot preclude the other parties from settling their own dispute, although an intervenor is entitled to have its objections to a settlement heard. Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland, 478 U.S. 501, 529 (1986). Thus, Plaintiffs and Defendants were free to reach settlement in this matter without Intervenor's involvement in negotiations. While Forest Guardians v. BLM, 188 F.R.D. 389, 397 (D. N.M. 1999), stated that the intervenors in that case should have been allowed to participate in settlement negotiations, that out-of-circuit case does not stand for the proposition that entry of a settlement is inappropriate because an intervenor was not involved in negotiations. In this case, the parties provided Intervenor with an opportunity to view a confidential draft of the settlement before it was finalized, and Intervenor provided comments. Here, Intervenor has maintained its right to object to the settlement, and that is all that is required.

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement
Case No. C08-1067-JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA  98101-1271
Telephone: 206-553-7970

6

Agreement, Section IV.A.4. In addition, the revised species list narrows the list of species to which Survey and Manage would apply by approximately 80 species from the more extensive list in the 2001 ROD, preserving a number of the changes made through the 2001-2003 ASRs based on sound science. The Settlement Agreement's terms provide the Agencies with greater flexibility in project planning, consistent with applicable statutory and regulatory requirements. See, e.g., 16 U.S.C. §§ 528-31 (Multiple-Use Sustained-Yield Act); 43 U.S.C. §§ 1701-87 (FLPMA); 43 U.S.C. §§ 1181a-1181j (Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act). The Settlement Agreement is also consistent with NEPA, NFMA, and FLPMA, and the Court's adverse merits decision. In sum, the settlement is fair and reasonable, consistent with statutes, and in the public interest. Thus, the Court should enter the Settlement Agreement as an appropriate remedy.

### B. Boody and Douglas Timber Operators Do Not Require NEPA Analysis or Further Plan Amendment Procedures Before the Settlement Agreement Can Take Effect

Intervenor relies on Boody to support its argument that NEPA analysis and plan amendment procedures under FLPMA and NFMA are required before making the modifications to the 2001 ROD set forth in the Settlement Agreement. Intv. Obj. at 2-3. This argument lacks merit for at least two reasons. First, Boody addressed agency action, not a settlement agreement that would be entered by a court as a remedy after an adverse merits decision. As discussed above, the Court has inherent equitable authority to enter the Settlement Agreement as a remedy in this case without NEPA analysis and plan amendment procedures. In approving a settlement to resolve litigation, a "judicial act" occurs, not an agency act, so APA notice and comment, NEPA, and other statutory requirements do not apply. See Turtle Island, 2011 WL 344117, at *5, 7, 9; Home Builder Ass'ns of N. Cal. v. Norton, 293 F. Supp. 2d 1, 5 (D.D.C. 2002). Second, the Settlement Agreement's revised species list is consistent with Boody. Boody involved only the 2001 and 2003 ASRs with respect to changes in categorization for one species—the red tree vole—in a portion of its range. Boody held that the 2001 and 2003 ASR changes for the red tree vole violated FLPMA and should have been subject to NEPA. 468 F.3d at 556, 562. But Boody addressed no other species and did not involve the Forest Service or NFMA. See id. at 553. Thus, any language in Boody that could be viewed as reaching to species other than the red tree vole in a portion of its range on BLM lands is merely

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement  
Case No. C08-1067-JCC

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, WA 98101-1271  
Telephone: 206-553-7970

7

dicta. The red tree vole ASRs at issue in Boody were held to be invalid based on the court's finding that those particular ASR decisions were a "dramatic" and "substantial[]" change to resource management plans that were not supported by evidence in the administrative record. Id. at 559-60. That specific record evidence regarding red tree voles is not implicated by the Settlement Agreement. The Settlement Agreement does not contravene Boody because the revised species list places the red tree vole in the same category as in the 2001 ROD. Moreover, as noted below, the ASRs were subject to NEPA review in the 2007 SEIS. Thus, Boody does not require NEPA analysis and plan amendment procedures before the Settlement Agreement is entered by the Court.

Intervenor in its Notice of Supplemental Authority at 1-3 (Dkt. No. 86) argues based on an out-of-circuit case, Douglas Timber Operators, Inc. v. Salazar, Civ. No. 09-1704 (JDB), 2011 WL 1195848 (D.D.C. March 31, 2011) ("DTO"), that FLPMA procedures must be followed before the Settlement Agreement can be entered. But that case is inapposite. DTO involved the Western Oregon Plan Revisions ("WOPR") RODs that had been adopted, and then withdrawn by the Secretary of the Interior based on "legal error" without going through the FLPMA planning process. Id. at *1, 10. The court found that the Secretary had to follow FLPMA planning procedures in order to withdraw the WOPR RODs. Id. at *11-12. In contrast, this case involves the 2007 RODs that were supported by the 2007 SEIS and were the result of the Agencies' planning process, which included opportunities for public comment. Although this Court found NEPA violations regarding the 2007 SEIS, the Settlement Agreement is within the scope of the valid analysis in the 2007 SEIS. Moreover, Intervenor's reliance on DTO ignores the Court's inherent equitable authority to enter the Settlement Agreement as a remedy without NEPA analysis and plan amendment procedures. Unlike DTO, agency action is not at issue here when the parties are seeking entry of the settlement by the Court. Also, DTO did not involve the Forest Service or NFMA. 2011 WL 1195848, at *1.[2] Thus,

---

[2] Intervenor's Notice also raises for the first time, without citation to any legal authority, the assertion that as a matter of law the Settlement Agreement cannot now apply to BLM. Dkt. No. 86 at 4. If the Court wishes to entertain this contention, Defendants request an opportunity for further briefing on this issue. DTO was issued just a few days ago, and the United States is analyzing the impact of that decision. At the time of the withdrawal of the WOPR ROD, there were several pending lawsuits challenging the WOPR RODs, which were dismissed without prejudice after the

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement  
Case No. C08-1067-JCC

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, WA 98101-1271  
Telephone: 206-553-7970

8

neither Boody nor DTO weigh against approving the remedy.

### C. Valid Portions of the 2007 SEIS Encompass the Settlement's Environmental Effects and Plan Amendment Procedures Were Followed in Issuing the 2007 RODs

Intervenor contends that an Environmental Assessment or an Environmental Impact Statement must be prepared and that plan amendment procedures such as opportunity for public participation are required before the Settlement Agreement can be entered. Intv. Obj. at 5. As discussed above, however, NEPA and public comment requirements are not applicable to judicial acts. Moreover, the 2007 SEIS provides NEPA coverage for the Settlement Agreement. In this case, Intervenor vigorously defended the adequacy of the 2007 SEIS under NEPA. Intv. Summ. J. Br. at 4 (Dkt. No. 46); Intv. Summ. J. Reply at 1-6 (Dkt. No. 58). This Court found only specific aspects of the 2007 SEIS to be deficient under NEPA. See Mem. Op. at 15-34 (Dkt. No. 65) (finding NEPA violations only as to the no-action alternative with respect to the Pechman exemptions, a lack of sufficient new information to support complete removal of Survey and Manage, and a lack of high-quality information on fire and fuel treatments, fuel treatment costs, and approximately 50 species). The remaining, valid analysis in the 2007 SEIS supports both the new exemptions and revised species list. The settlement does not set aside the 2007 SEIS, thereby leaving in place an environmental analysis that covers the effects of the settlement. Furthermore, the Agencies provided opportunities for public input during the administrative process for the 2007 RODs, and the substance of the settlement is within the range of alternatives disclosed to the public.

1. NEPA Analysis and Public Participation Related to the New Exemptions

The effects of the new exemptions in the Settlement Agreement are encompassed by the analysis in the 2007 SEIS. The 2007 SEIS looked at the environmental effects of removing Survey and Manage in its entirety (Alternative 2), and the effects of the new exemptions form a subset of this broader analysis. 2007 SEIS at 39. The new exemptions in the settlement propose discrete

---

withdrawal. Or. Wild v. Shepard, No. 09-0060 (D. Or. filed Jan. 15, 2009); Forest Serv. Employees for Envtl. Ethics v. U.S. Fish & Wildlife Serv., No. 09-6019 (D. Or. filed Jan. 15, 2009); Pac. Rivers Council v. Shepard, No. 09-0058 (D. Or. filed Jan. 15, 2009); Am. Forest Res. Council v. Kempthorne, No. 09-00003 (D.D.C. filed Jan. 2, 2009). As a result of DTO's vacatur and remand of the withdrawal of the WOPR RODs, plaintiffs who brought the original lawsuits may re-file them.

| | |
|---|---|
| Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement<br>Case No. C08-1067-JCC<br><br>9 | UNITED STATES ATTORNEY<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>Telephone: 206-553-7970 |

exemptions from pre-disturbance surveys, and in some cases, such as the "dry forest" exemptions, they are also limited geographically. In addition, the 2007 SEIS analyzed Alternative 3, which would have kept in place Survey and Manage while eliminating pre-disturbance surveys for projects in non-late successional and non-old growth areas. 2007 SEIS at 61. Alternative 3 would have operated in a similar fashion to the settlement's new exemptions, except it included a broader exemption from pre-disturbance surveys, while the settlement would only exempt a smaller group of specific project types. Thus, the analysis of Alternatives 2 and 3 in the 2007 SEIS provides an environmental analysis of the effects of this component of the Settlement Agreement.

The Court's merits decision did not find violations of law concerning the portions of the 2007 SEIS on which the new exemptions rely. The Court's primary holding with regard to the analysis contained in the 2007 SEIS centered on two components of the analysis related to fire and fuel treatments and the cost estimates for fuel treatments. Mem. Op. at 23-27 (Dkt. No. 65). The proposed new exemptions do not rely on the fire and fuels treatment rationales. Given the scope of the new exemptions, and the narrow deficiencies found by the Court in the 2007 SEIS, the NEPA analysis in the valid portions of the 2007 SEIS supports the new exemptions.

The Agencies followed plan amendment procedures, such as providing an opportunity for public comment, in the course of issuing the 2007 RODs. Intervenor has not challenged that process. The substance of the new exemptions in the Settlement Agreement was subject to an opportunity for public input, since Alternative 2 contemplated complete removal of Survey and Manage and Alternative 3 set forth modifications to Survey and Manage. As site-specific projects are developed, the public will have an opportunity to comment on application of the settlement.

2. <u>NEPA Analysis and Public Participation Related to the Revised Species List</u>

The analysis in the 2007 SEIS provides NEPA coverage for the changes in the revised species list. The species list revisions can be divided into two broad groups: (1) revisions based on the changes made through the 2001-2003 ASRs and (2) revisions based on new information since the 2003 ASRs. Both groups of changes were analyzed in the 2007 SEIS and were not invalidated.

The revisions to the species list that are based on the 2001-2003 ASRs (involving 76 species)

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement
Case No. C08-1067-JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone: 206-553-7970

10

1   were the subject of valid NEPA analysis and public involvement. The 2007 SEIS provided NEPA
2   analysis for the 2001-2003 ASRs by comparing the potential effects of Alternative 1 to Alternative 4
3   (for which the only difference was the ASR changes). 2007 SEIS at 81-95. Plaintiffs did not
4   challenge, and the Court did not invalidate, the portion of the 2007 SEIS that analyzed the ASR
5   changes. This Court found that there was inadequate NEPA analysis with respect to approximately
6   50 species for which the 2007 SEIS concluded that removal from Survey and Manage would likely
7   have a negative or unknown result. See Mem. Op. at 22 (Dkt. No. 65). Those species will continue
8   to be subject to Survey and Manage or other protections. The Court did not invalidate any other
9   aspects of the 2007 SEIS regarding potential effects on species, including the species whose
10  assigned management categories would change from the 2001 ROD as a result of the settlement.
11  Thus, the public had a full opportunity to comment on the effects of ASR changes during the
12  administrative process for the 2007 RODS, and will have an opportunity to provide input on the
13  application of the Settlement Agreement when site-specific projects are developed.

14         As for the changes in the revised species list based on new information since the 2003 ASRs
15  (involving 4 species), this Court did not find the NEPA analysis for these species to be deficient.
16  The four species include an aquatic lichen, *Leptogium rivale*; mollusk, *Helminthoglypta talmadgei*;
17  and two vertebrates for which there are other mitigation measures, Great gray owl and Siskiyou
18  Mountains salamander. The 2007 SEIS concluded for the first two species that, based on recent
19  scientific data, habitat is likely to be sufficient to provide for stable populations even if the species
20  were removed from Survey and Manage. 2007 SEIS at 221, 255. This analysis was not invalidated
21  by the Court. Thus, there is adequate NEPA analysis for this lichen and mollusk, and the public had
22  an opportunity to comment on these species during the decision-making process for the 2007 RODs.

23         The revised species list assigns the Great gray owl to the same category as in the 2001 ROD
24  with additional mitigation measures. See Agreement, Attach. 1 at 8. This Court did not invalidate
25  the 2007 SEIS's conclusion that, if the Great gray owl were assigned to the same category as in the
26  2001 ROD, there would be sufficient habitat to support stable populations in the Northwest Forest
27  Plan area. 2007 SEIS at 286; see also 2000 SEIS at 367. The settlement's mitigation measures,
28  which are similar to those disclosed in the 2007 SEIS, contain refinements regarding pre-disturbance

surveys and management of known sites that will provide even greater assurance of stable populations. 2007 SEIS, Appx. 1 at 33. Thus, the Great gray owl's status in the revised species list is the subject of valid NEPA analysis on which the public had an opportunity to comment.

The revised species list would remove the Siskiyou Mountains salamander in its north range from Survey and Manage because other mitigation measures are already in place, namely the August 2007 Conservation Strategy and Agreement for the Siskiyou Mountains salamander developed between the BLM, Forest Service, and Fish and Wildlife Service in order to avoid a trend toward listing under the Endangered Species Act. See Agreement, Attach. 1 at 8. The Agencies are committed to following this Conservation Strategy, which provides for long-term conservation of the species. Id. The Conservation Strategy provides very similar management requirements for the salamander when compared to Survey and Manage requirements under either the 2001 ROD or the 2003 ASRs. Id. This Court did not invalidate the 2007 SEIS's conclusion that managing the salamander under either the 2001 ROD or the 2003 ASRs would be sufficient to support stable populations. 2007 SEIS at 281. Given the similarity in the Conservation Strategy's management requirements, there is valid NEPA coverage for this change in the revised species list, and the public had an opportunity to provide input during the NEPA process for the 2007 RODs.

In sum, the 2007 SEIS's analysis of environmental effects encompasses the changes in the revised species list. The public had, and will have, ample opportunity to be involved.[3]

## **CONCLUSION**

For the foregoing reasons, the Court should exercise its broad equitable authority to enter the Settlement Agreement over Intervenor's Objection as an appropriate remedy.

---

[3] Intervenor cites prior settlement agreements from Douglas Timber Operators v. Secretary of Agriculture, No. 01-cv-6378-AA (D. Or.), and American Forest Resource Council v. Clarke, Civ. No. 04-1031-TPJ (D.D.C. 2003), to argue that the Settlement Agreement should have included terms regarding compliance with plan amendment and public participation procedures. Intv. Obj. at 5-6. But the language in the cited prior settlement agreements was the result of the parties' negotiations in those cases under different circumstances, and do not establish any precedent that applies here. See Ariz. v. Cal., 530 U.S. 392, 414 (2000) ("[S]ettlements ordinarily occasion no issue preclusion, . . . unless it is clear, as it is not here, that the parties intend their agreement to have such an effect.").

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement  
Case No. C08-1067-JCC

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, WA 98101-1271  
Telephone: 206-553-7970

12

Respectfully submitted this 8th day of April, 2011.

      IGNACIA S. MORENO
      Assistant Attorney General

      /s/ Beverly F. Li
      BEVERLY F. LI (WSBA # 33267)
      BRIAN M. COLLINS (TX #24038827)
      Trial Attorneys
      U.S. Department of Justice
      Environment & Natural Resources Div.
      P.O. Box 663
      Washington, DC 20044-0663
      Telephone: (202) 353-9213/ (202) 305-0428
      Facsimile: (202) 514-8865
      beverly.li@usdoj.gov
      brian.m.collins@usdoj.gov

      MARK ARTHUR BROWN
      Trial Attorney
      U.S. Department of Justice
      Wildlife & Marine Resources Div.
      P.O. Box 7369
      Washington, DC 20044-0663
      Telephone: (202) 305-0204
      Facsimile: (202) 305-0275
      Mark.Brown@usdoj.gov

      JENNY A. DURKAN
      United States Attorney
      BRIAN KIPNIS
      Assistant United States Attorney
      700 Stewart Street, Suite 5220
      Seattle, WA  98101-1271
      Telephone: 206-553-7970
      Brian.Kipnis@usdoj.gov

      Attorneys for Federal Defendants

Fed. Defs.' Response to Intv.'s Obj. to Settlement Agreement
Case No. C08-1067-JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, WA  98101-1271
Telephone: 206-553-7970

13

# CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2011, I electronically filed the foregoing FEDERAL DEFENDANTS' RESPONSE TO INTERVENOR'S OBJECTION TO SETTLEMENT AGREEMENT, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Peter Frost              frost@westernlaw.org

Daniel Galpern           galpern@westernlaw.org

Stephanie M. Parent      parentlaw@gmail.com

Corrie Yackulic          yackulic@sgb-law.com

Attorneys for Plaintiffs

Shay Scott               Sscott@hk-law.com

Scott Horngren           Shorngren@amforest.org

Attorney for Intervenor

                                               /s/ Beverly Li
                                               Beverly Li
                                               Counsel for Federal Defendants