Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONSERVATION NORTHWEST et al., | CASE NO. C08-1067-JCC |
|    Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANT-INTERVENOR'S OBJECTIONS TO SETTLEMENT AGREEMENT** |
| v. | |
| HARRIS SHERMAN et al., | |
|    Defendants, | |
|    and | |
| D.R. JOHNSON LUMBER COMPANY, | |
|    Defendant-Intervenor. | |

Plaintiffs' Resp. to Intervenor's Objs.　　　　　　　　　Western Environmental Law Center, 541-485-2471
Case No. C08-1067-JCC　　　　　　　　　　　　　　　　1216 Lincoln Street, Eugene, Oregon, 97401

Plaintiffs Conservation Northwest et al., ("Conservation Northwest") hereby respectfully file this response to the objections of Defendant-Intervenor D.R. Johnson Lumber Company ("D.R. Johnson") to the request of Conservation Northwest and Defendants Harris E. Sherman et al. ("Agencies") that this Court approve a settlement agreement to effectuate relief in this case.

## Background.

A short history of the survey and manage program and related litigation helps resolve D.R. Johnson's objections. As this Court is aware, in April, 1994, the Agencies adopted the Northwest Forest Plan, which among other things includes the Survey and Manage, Protection Buffer, and other Mitigation Measures Standards and Guidelines. *Conservation Northwest v. Rey*, 674 F.Supp.2d. 1232, 1237 (W.D. Wash. 2009). In January, 2001, the Agencies issued a record of decision to amend the survey and manage program ("2001 ROD"). *Id*. at 1239. In March, 2004, the Agencies issued a record of decision to remove the 2001 ROD. *Id*. On August 1, 2005, Judge Pechman ruled that the Agencies violated the National Environmental Policy Act ("NEPA") when they removed the 2001 ROD. *Id., citing Northwest Ecosystem Alliance v. Rey*, 380 F.Supp.2d 1175 (W.D. Wash. 2005). On January 9, 2006, Judge Pechman issued an order granting a permanent injunction that, among other things, reinstated the 2001 ROD, and required all agency projects to comply with it. *Northwest Ecosystem Alliance v. Rey,* 2006 WL 44361, at *9 (W.D. Wash. Jan. 9, 2006). On October 11, 2006, the parties in *Northwest Ecosystem* filed a stipulation and proposed order, asking Judge Pechman to amend the permanent injunction to establish four new categories of agency activities that would be exempt from the survey and manage standard. *Northwest Ecosystem Alliance*, C04-0844-P (Dkt. No. 108). One day later, Judge Pechman issued an order amending the permanent injunction in that respect. *Id*. (Dkt. No. 109).

In July, 2007, the Agencies issued records of decision ("2007 RODs") seeking to again remove the survey and manage standard from the Northwest Forest Plan. *Conservation Northwest*, 674 F.Supp.2d at 1240. In August, 2007, the Agencies filed a motion under FRCP 60(b) to modify the permanent injunction issued by Judge Pechman. *Northwest Ecosystem Alliance*, C04-0844-P (Dkt. No. 117). The Agencies asked Judge Pechman solely to "lift [the court's] injunction against a category of projects to which the 2004 Survey and Manage Record of Decision applied and which

were not excepted from the Court's order." *Id*. at 2:3-5.  The Agencies did not address other aspects of the permanent injunction.  *Id*. at 1-8.  Judge Pechman denied the motion, ruling that "the mere fact that the Agencies decided to issue a new ROD after the Court reinstated the 2001 ROD, without more, does not provide a sufficient basis to warrant a modification" of the permanent injunction. *Northwest Ecosystem Alliance,* C04-0844-P (Dkt. No. 125 at 8:5-7).

In July, 2008, Conservation Northwest filed this lawsuit to challenge the 2007 RODs.  In December, 2009, this Court ruled that the Agencies' 2007 SEIS and RODs violate NEPA in certain respects.  *Conservation Northwest v. Rey*, 674 F.Supp.2d at 1244-1256.  This Court declined to issue a remedy, and directed the parties to confer as to case management.  *Id*. at 1257.

Subsequently, Conservation Northwest and the Agencies engaged in negotiations to settle the relief phase of this case.  On March 4, 2011, these parties filed a stipulation and proposed order asking this Court to approve a settlement agreement to effectuate relief.  (Dkt. No. 81).  Generally, the agreement confirms that the 2001 ROD is in effect, and modifies parts of it.  It provides:

1. The 2001 ROD is in effect (term I.B.).

2. Judge Pechman's order modifying the 2001 ROD, and establishing four categories of activities that are exempt from the standard, is in effect (terms I.C. & III.).

3. The species in the program, and in what categories (term II.A. and attachment 1).

4. The Agencies have a transition period during which they may apply either the list of species in the 2001 ROD, or the list of species in attachment 1 (term II.B.)

5. New categories of agency activities are exempt from the standard (terms IV.A.1. through IV.A.7.).

6. Existing or found "known sites" of species within the area of projects exempted under the agreement are subject to management recommendations (term IV.B.).

Standard of Review.

A court may approve a settlement agreement that is "fair and reasonable."  *See United States v. Oregon*, 913 F.3d 576, 580 (9th Cir. 1990) (reviewing a consent decree for abuse of discretion).

Argument.

D.R. Johnson does not argue – let alone prove – that any specific term of the proposed

Plaintiffs' Response to Intervenor's Objs.   
Case No. C08-1067-JCC

2

Western Environmental Law Center, 541-485-2471   
1216 Lincoln Street, Eugene, Oregon, 97401

settlement agreement is unfair or unreasonable.  Instead, D.R. Johnson argues only and generally that *all* of the settlement agreement should be subject to notice and comment, because certain aspects of it modify the 2001 ROD.  D-I's Objs. at 2:3-7.  D.R. Johnson's broad attack on the settlement agreement fails to establish a basis for this Court not to approve it, because all of its terms are fair and reasonable, and could have been ordered by this Court on a motion for injunctive relief.

### A. The 2001 ROD Remains In Effect.

The settlement agreement memorializes that the 2001 ROD is "in effect" (term I.B.).  In her permanent injunction, Judge Pechman explicitly reinstated the 2001 ROD, and she refused to modify the permanent injunction to allow certain projects to be implemented without complying with the 2001 ROD, based on "the mere fact that the Agencies decided to issue a new ROD after the Court reinstated the 2001 ROD." *Northwest Ecosystem Alliance,* C04-0844-P (Dkt. No. 125 at 8:5-7). Indeed, even after the Agencies issued the 2007 RODs seeking to eliminate the program, they continued to issue decisions for logging projects stating that they are exempt from the survey and manage program under the exemptions Judge Pechman ordered, which would have been unnecessary if the 2007 RODs had become effective.  *See, e.g.,* Ps' Ex. 1, at 18 (filed herewith). The 2001 ROD has been in effect since Judge Pechman reinstated it.

D.R. Johnson argues that, due to an order in an unrelated case, the 2001 ROD no longer applies on the lands administered by the Bureau of Land Management in southern Oregon.  D-I's Objs. at 4:2-8, citing *Douglas Timber Operators, Inc. v. Salazar*, Civ. No. 09-1704 (JDB), 2011 WL 1195848 (D. D.C. March 30, 2011).  In *Salazar*, the court ruled that the Secretary of the Interior violated the Federal Land Policy and Management Act when he unilaterally withdrew, without public notice or comment, the records of decision adopting the Western Oregon Plan Revisions ("WOPR").  *Id*. at 14.  D.R. Johnson asserts, without support, that "the court restored the [WOPR] by vacating the Secretary's decision to withdraw the revisions."  D-I's Objs at 2:27 & 3:1.  That is not what the court did: it vacated the Secretary's decision, and remanded the matter to the Secretary "for further proceedings consistent with this Court's opinion."  Ps' Ex. 2 (court order); *see also Salazar*, 2011 WL 11195848, at 14.  The court did not explicitly restore the WOPR.  *Id.*; *cf. Citizens for Better Forestry v. USDA*, 481 F.Supp.2d 1059, 1100 (N.D. Cal. 2007) (vacating changes to

Plaintiffs' Response to Intervenor's Objs.
Case No. C08-1067-JCC

3

Western Environmental Law Center, 541-485-2471
1216 Lincoln Street, Eugene, Oregon, 97401

Forest Service regulations, remanding the matter back to the agency, and refusing to reinstate prior regulations, on the ground that "this is a determination for [the agency] to make in the first instance."). Indeed, the *Salazar* case is bifurcated into merits and relief phases, and the relief phase has not begun. *Salazar*, Civ. No. 09-1704 (JDB) (D. D.C.) (Dkt. No. 23) (stipulated case management schedule approved by Dec. 18, 2009, minute order). There is no basis for this Court to reject the settlement agreement on the ground that the survey and manage program does not apply to lands that were covered by the WOPR. *Cf.* D-I's Objs. at 4:2-8.

      B.      <u>The Court Has Authority to Approve a Settlement that Modifies the 2001 ROD</u>.

D.R. Johnson's sole argument is that this Court should not approve the settlement agreement because changes to the 2001 ROD must go through notice and comment procedures. D.R. Johnson is wrong in two respects.

First, D.R. Johnson's colleagues, represented by the same counsel, previously stipulated to changes to the 2001 ROD without any notice and comment procedures. As this Court is aware, after Judge Pechman reinstated the 2001 ROD, all of the parties in *Northwest Ecosystem* – including the Defendants-Intervenors -- filed a stipulation and proposed order, asking Judge Pechman to amend the permanent injunction to establish four new categories of agency projects that would be exempt from the survey and manage program. *Northwest Ecosystem Alliance*, C04-0844-P (Dkt. No. 108). Judge Pechman granted the parties' request. *Id*. (Dkt. No. 109). The effect of her order was to modify the 2001 ROD and exempt for the first time categories of activities from its requirements. Those changes were not subject to notice and comment procedures. Here, D.R. Johnson has not shown that there is anything *procedurally* different between the action Judge Pechman took in 2006 and the present parties' request that this Court approve the settlement agreement: it too simply modifies the existing 2001 ROD in certain respects.

Second, D.R. Johnson fails to distinguish between agency action and this Court's authority to grant relief based upon its declaratory judgment. If the Forest Service or the BLM makes changes to the survey and manage program, the Agencies must comply with NEPA and other federal laws. *See Klamath Siskiyou Wildlands Center v. Boody*, 468 F.3d 549, 556 (9th Cir. 2006). But here, the Agencies are not acting independently. This Court issued a declaratory judgment that the Agencies

Plaintiffs' Response to Intervenor's Objs.  
Case No. C08-1067-JCC      4      Western Environmental Law Center, 541-485-2471  
1216 Lincoln Street, Eugene, Oregon, 97401

violated NEPA, and the settlement agreement is a proposal to effectuate relief for that legal violation. *See* 28 U.S.C. § 2202 (providing that the court may issue "further necessary and proper relief" based upon a declaratory judgment). The issue is not functionally different than if the settlement negotiations between Conservation Northwest and the Agencies failed, and Conservation Northwest had had to file a motion for injunctive relief. Conservation Northwest could ask this Court to adopt certain changes to the 2001 ROD and, in that circumstance, just as in the context of this Court's consideration of the settlement agreement, there is no question that this Court has "broad latitude in fashioning equitable relief when necessary to remedy an established wrong." *Natural Res. Def. Council v. Southwest Marine, Inc.,* 236 F.3d 985, 999 (9th Cir. 2000) (internal quotations marks omitted). In fact, approval of a settlement agreement, like a consent decree, "need not impose all the obligations authorized by law." *United States v. State of Oregon*, 913 F.2d at 581. Rather, the court's approval "is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.*, citing *Officers for Justice v. Civil Services Comm't of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983) (citation omitted).

There is also no question that this Court's broad authority in fashioning a remedy extends to an order including provisions that, if an agency acting alone were to propose, would be subject to notice and comment procedures. For example, in *High Sierra Hikers Ass'n v. Moore,* 561 F.Supp.2d 1107 (N.D. Cal. 2008), the district court, on the plaintiffs' motion, issued a detailed permanent injunction that modified a Forest Service wilderness management plan that had been adopted pursuant to notice and comment procedures under NEPA. *Id*. at 1114-1120. This Court plainly has authority to approve the settlement agreement.

   C. <u>The Terms of the Settlement Agreement are Fair and Reasonable</u>.

It is critical to this Court's consideration of D.R. Johnson's objections that D.R. Johnson does not contend that any particular provision of the settlement agreement is unfair or unreasonable. D.R. Johnson accurately notes that certain provisions of the agreement, if independently proposed by the Agencies, would be subject to notice and comment procedures. But that is not enough. There is nothing *unfair* or *unreasonable* about a few new agency activities that would be now exempt from

the survey and manage standard (terms IV.A.1. through IV.A.7.). Those exemptions are in the settlement agreement precisely to respond to the Agencies' representations that the 2001 ROD has been, in their view, and in certain respects, cumbersome and onerous, a position that D.R. Johnson has vigorously joined and even furthered. *See* D-I's Cross Motion for Summary Judgment, at 4 (Dkt. No. 46) (stating that "D.R. Johnson Lumber Company respectfully urges this court to affirm the federal land management agencies' decision to remove a multi-million dollar, time consuming, and unnecessary species survey and land withdrawal requirement."). It is important to Conservation Northwest that this Court is aware that certain exemptions in the settlement agreement are hard for it to stomach, particularly those for logging projects in forest stands older than 80 years, where rare and uncommon species protected by the survey and manage standard generally find habitat (*see* terms IV.A.7.). But that is the nature of a productive settlement negotiation: "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 624 (9th Cir. 1982).

       In contrast, D.R. Johnson generally assails these new exemptions not because any are unfair or unreasonable, but simply because they include prescribed *conditions* for new exemptions. *See, e.g.*, D-I's Objs. at 3:28 to 4:15. But first, agreeing on prescribed conditions is not new: the four exemptions proposed by all parties and approved by Judge Pechman also include conditions, such as the forest age class of younger than 80 years for certain logging projects. *Northwest Ecosystem,* C04-0844-P (Dkt. No. 109), at 2. Second, the irony of D.R. Johnson's argument related to the exemption of new logging projects in dry forest types is that, as D.R. Johnson concedes, the exemption actually *reduces* the size of the buffers required for the red tree vole, if certain conditions are met, which would seem to be what D.R. Johnson would want, instead of what the 2001 ROD requires. *Cf.* D-I's Objs. at 4:2-5.

       The lack of required specificity of D.R. Johnson's objections is plainly revealed when it characterizes the terms of the new exemption for certain logging projects in forest stands 80 years or older in dry forest types new "detailed restrictions" on how "forests in [the] Matrix must be treated." D-I's Objs. at 4:16-18. Again, these are fair, reasonable, hard-fought, and agreed-upon *conditions* for *new* exemptions from the 2001 ROD. So too are the "modification of the size of the red tree vole

preserves." *Id*. The only other specific terms of the settlement agreement that D.R. Johnson mentions – without establishing that they are unfair or unreasonable – are that the agreement would "shift species between categories and drop species from the species list." D-I's Objs. at 3:26-28. Both assertions are true, but Conservation Northwest is incredulous that D.R. Johnson, which advocates for eliminating the survey and manage program as a whole, truly has a problem with dropping certain species from protective coverage under the program. *Id.* As to shifting species between categories – meaning that some will not always now receive the benefit of full pre-disturbance surveys (like the great grey owl, in certain circumstances; *see* settlement agreement, attachment 1, note 3 [establishing a "reduced survey effort" for the owl]), again, D.R. Johnson wants the survey and manage program gone; it cannot and does not establish any harm to its or the public's interest in some modifications to the program, as agreed to by some of its fiercest advocates.

The bottom line is that procedurally, D.R. Johnson's colleagues and its counsel were fine with modifying the 2001 ROD via a court order, when they liked the exemptions presented to Judge Pechman. But now D.R. Johnson apparently doesn't, and asserts that modifications must go through notice and comment procedures, perhaps betting that it can get a better deal as a result. But this preference does nothing to meet its burden of establishing that any term in the settlement agreement is unfair or unreasonable.

Two final points about D.R. Johnson's objections. It is true that in *Douglas Timber Operators v. Sec. of Agric. And Sec. of Interior*, Case No. 01-CV-6378-AA (D. Or.), the settlement agreement recited that the Agencies would perform a NEPA analysis to consider whether to eliminate the survey and manage standard. D-I's Objs. at 6:1-13; *see* Horngren Dec., Ex. 1. But the result of that process was foreordained, and then it was realized, when the Agencies issued the 2004 ROD to eliminate the standard. Second, responding to D.R. Johnson's argument that it was inappropriately excluded from the settlement negotiations on relief in this case, undersigned counsel was counsel of record in a case consolidated with *Douglas Timber Operators* in district court in Eugene, and learned of the plaintiffs' and defendants' settlement agreement in *Douglas Timber Operators* only after they filed it with a stipulation and [proposed] order to approve it. In contrast, here, Conservation Northwest and the Agencies allowed D.R. Johnson to be aware of the general

Plaintiffs' Response to Intervenor's Objs.  
Case No. C08-1067-JCC

7

Western Environmental Law Center, 541-485-2471  
1216 Lincoln Street, Eugene, Oregon, 97401

terms of their prospective proposed settlement agreement months before it was proposed to this Court for approval, and its counsel had the chance to notify Conservation Northwest and the Agencies of his views on the draft agreement before it was finalized and submitted to this Court.

## Conclusion.

This Court should approve the settlement agreement to effectuate relief in this case because it is eminently fair and reasonable.

Dated: April 8, 2011.    Respectfully submitted,

/s/ Peter M.K. Frost
Peter M.K. Frost, *pro hac vice*
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon  97401
541-359-3238
fax: 541-485-2457
frost@westernlaw.org

Plaintiffs' Response to Intervenor's Objs.
Case No. C08-1067-JCC

8

Western Environmental Law Center, 541-485-2471
1216 Lincoln Street, Eugene, Oregon, 97401