THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONSERVATION NORTHWEST, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT BONNIE, et al., <br><br> Defendants. | CASE NO. C08-1067-JCC <br><br> ORDER |

This matter comes before the Court on Plaintiffs' motion for injunctive relief (Dkt. No. 104). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part the motion for the reasons explained herein.

**I.     BACKGROUND**

The background of this lengthy case was recited in detail in the Court's previous Order (Dkt. No. 65) and is reiterated only briefly here. Plaintiffs are a coalition of environmental groups; Defendants are federal agencies the Bureau of Land Management ("BLM"), the Forest Service, and the Fish and Wildlife Service (collectively "the Agencies"); and Defendant-Intervenor D.R. Johnson Lumber Company ("D.R. Johnson") is a commercial lumber company.

This case concerns management of old-growth forests in Washington, Oregon, and California—in particular, the component of the forest-management plan ("the Plan") known as

"Survey and Manage." Survey and Manage is a set of measures that aim to ensure that federal agencies properly assess the impact of logging on approximately 400 uncommon plant, animal, and fungal species. (Dkt. No. 65 at 2, 5.) After several years of implementing Survey and Manage, the Agencies attempted to streamline its implementation in a 2001 Record of Decision ("ROD"), which was based on a 2000 Supplemental Environmental Impact Statement ("SEIS"). (Dkt. No. 65 at 7.) That decision was challenged in court, but the challenge was dismissed pending a new SEIS, which was prepared in 2004. (Dkt. No. 65 at 7.)

In 2004, the Agencies issued an ROD eliminating Survey and Manage; that decision was challenged in this court. *See Northwest Ecosystem Alliance v. Rey*, 380 F.Supp.2d 1175 (W.D. Wash. 2005). Judge Pechman concluded that the decision to eliminate Survey and Manage violated the National Environmental Policy Act ("NEPA") and ultimately set aside the 2004 ROD, reinstated the 2001 ROD, and granted an injunction to stop certain logging projects. (Dkt. No. 65 at 7–8.) The Agencies then began preparing a supplement to address the NEPA deficiencies. (*Id.* at 8.)

Meanwhile, in 2006, the Ninth Circuit considered a legal challenge to another part of the forest-management plan—two Annual Species Review ("ASR") processes that changed the classification of the red vole. *See Klamath Siskiyou Wildlands Center v. Boody*, 468 F.3d 549, 553 (9th Cir. 2006). The Ninth Circuit concluded that both these ASR decisions failed to satisfy NEPA so were invalid. *Id.* at 562.

In 2007, the Agencies issued a Final Supplement and associated RODs (2007 RODs), which were the subject of this litigation. (Dkt. No. 65 at 8.) This Court ruled that the 2007 SEIS violated NEPA and directed the parties to confer regarding remaining issues in the case. *See Conservation Northwest v. Rey*, 674 F.Supp.2d 1232, 1257 (W.D. Wash. 2009). The parties filed a March 2011 stipulation and proposed order for settlement terms, which this Court approved (the "Consent Decree"). (Dkt. Nos. 90–91.)

On appeal by D.R. Johnson, the Ninth Circuit reversed the approval of the Consent

Decree on the basis that it constituted a "substantial and permanent" amendment to the Survey and Manage standard so should only have been enacted in accordance with applicable procedural requirements. *Conservation Northwest v. Sherman*, 715 F.3d 1181, 1183 (9th Cir. 2012).

On remand, Plaintiff requests that this Court set aside the 2007 RODs, "confirm" that the 2001 ROD is in effect without changes made via two ASR processes, and allow projects that were begun in reliance on the Consent Decree to be implemented. (Dkt. No. 104 at 7.) Defendants agree with Plaintiffs that the 2007 RODs should be vacated and that projects initiated in reliance on the Consent Decree should be allowed to proceed. Defendants, however, argue that any decision implicating the ASRs is not properly before this Court and would go beyond the scope of the particular procedural deficiencies that this Court found in its previous order. (Dkt. No. 110 at 17–20.)

Defendant-Intervenor D.R. Johnson argues that no injunctive relief should be provided (Dkt. No. 109 at 3–4) and also argues that the Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act of 1937 ("O & C Act") precludes application of Survey and Manage to some land within the Plan's area. (Dkt. No. 109 at 7.)[1]

## II.   DISCUSSION

### A.   Vacating the 2007 RODs

The Administrative Procedure Act ("APA") states that a court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). Despite this seemingly mandatory statutory language, flawed rules need not necessarily be vacated: "'when equity demands, the regulation can be left in place while the agency follows the necessary procedures' to correct its action." *California Cmtys Against Toxics v. United States Envtl. Prot. Agency*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58

---

[1] The Ninth Circuit has described the background of the O & C Act in detail in *Skoko v. Andrus*, 638 F.2d 1154 (9th Cir. 1979).

F.3d 1392, 1405 (9th Cir. 1995)).

The Ninth Circuit has established no single test for determining when agency actions should be vacated, but it has suggested that "[w]hether agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Id.* (quoting *Allied-Signal, Inc. v. United States Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). Considerations include the possibility of unpredictable and undesirable consequences resulting from invalidation, *see Western Oil & Gas Ass'n v. United States Envtl. Prot. Agency*, 633 F.2d 803, 813 (9th Cir. 1980), and the undesirability of "thwarting in an unnecessary way the operation of [the relevant statute] during the time the deliberative process is reenacted," *id.*.

In this case, these considerations clearly suggest that vacatur is appropriate. With regard to the relevant environmental harms, it appears undisputed that without vacatur over 30,000 acres of mature and old-growth forests that provide a habit for relevant species will be released for logging. (Dkt. No. 111 at 3; Dkt. No. 110 at 15; Dkt. Nos. 109, 114 (not disputing figure)). And this Court has also already concluded that eliminating Survey and Manage "[would] have negative effects for a large number of species—and totally unknown effects for others." (Dkt. No. 65 at 22.) D.R. Johnson suggests in a conclusory fashion that any species will be protected regardless because "the agencies will apply their special status and sensitive species policies in the absence of survey and manage," but the Court does not find this a compelling statement, particularly in light of the Court's previous recognition that Survey and Manage may be working. (Dkt. No. 65 at 21 (recognizing that new information used to justify abandoning Survey and Manage actually may demonstrate its effectiveness)).

Further, the seriousness of the deficiencies in the 2007 RODs counsels in favor of vacatur. This Court identified several NEPA violations. First, the 2007 RODs lacked an appropriate "No Action" alternative. (Dkt. No. 65 at 15–19.) Second, the Agencies' methodology in abandoning Survey and Manage was flawed and not sufficiently supported by "new

information." (*Id.* at 19–23.) Finally, the 2007 RODs lacked appropriately accurate scientific data and analysis supporting its assessment of fire and fuel treatments (*id.* at 24–27), and its predictions about how the removal of Survey and Manage would affect species (*id.* at 28–29). These are not minor errors nor the sorts of errors consistent with merely technical procedural violations. *Cf. Laguna Greenbelt, Inc. v. United States Dep't of Transp.*, 42 F.3d 517, 527 (9th Cir. 1994) (declining to grant relief in face of technical violation of NEPA because "decision-maker was otherwise fully informed as to the environmental consequences and NEPA's goals were met"). Rather, they call into question whether Survey and Manage would have been abandoned if the Agencies had made a procedurally sound decision. Indeed, Defendants agree with Plaintiffs that vacatur is appropriate in these circumstances. (Dkt. No. 110 at 13.)

Finally there is no concern that vacating the decision will have any "disruptive consequences" because, as discussed below, projects undertaken in reliance on the Consent Decree will be allowed to continue. D.R. Johnson points generally to economic difficulties in rural areas, but it relies solely on a newspaper article which itself suggests there are no easy solutions and that logging does not solve the problem. (Dkt. No. 109 at 6.) An extraordinarily complex web of factors lead to rural poverty. Logging regulations are a part of that web, but that does not dictate the outcome here. *Cf. California Cmtys Against Toxics*, 688 F.3d at 993–94 (describing "severe" consequences of vacating an agency decision, including blackouts, "economically disastrous" results of halting a billion-dollar venture, and the likelihood that the state legislature would be required to pass a new bill).

B.   **2001 ROD and Subsequent ASR changes**

The parties agree that "[t]he effect of invalidating an agency rule is to reinstate the rule previously in force." *See Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 1995). (Dkt. No. 104 at 7; Dkt. No. 110 at 16). The parties also agree that the rule previously in force was that "Judge Pechman's order reinstating the 2001 ROD was still in effect." (Dkt. No. 110 at 17 (quoting Plaintiff's brief).) As Defendants state, "[v]acatur of the 2007 RODs would have the result of

ORDER
PAGE - 5

returning to the status quo, under which the 2001 ROD with some of the ASR changes and removals were reinstated through Judge Pechman's injunction order." (Dkt. No. 110 at 17.)

Despite this apparent agreement, Plaintiffs request that this Court "confirm" that the 2001 ROD remains in effect and requests an additional statement about the status of the red tree vole. (Dkt. No. 104 at 7; Dkt. No. 111 at 6.) Defendants object that such a statement would constitute injunctive relief and that Plaintiffs have failed to satisfy their burden or demonstrating that injunctive relief is appropriate. (Dkt. No. 110 at 13.)

Injunctive relief is appropriate only when a plaintiff satisfies a four-factor test, showing "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010). "Once plaintiffs establish that they are entitled to injunctive relief, the district court has broad discretion in fashioning a remedy." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990). Even so, "an injunction must be narrowly tailored to give only the relief to which plaintiffs are entitled." *Id.*

Plaintiffs' arguments for why an "injunction" is appropriate speak merely to why the 2007 RODs should be vacated. (Dkt. No. 104 at 9–10.) Their arguments for why there would be irreparable injury, what hardships exist, and how the public interest is affected address factors that counsel in favor of vacating the 2007 RODs. There appear to be no additional reasons suggesting why this Court's "confirmation" is necessary.[2] Plaintiff implicitly admits as much in suggesting that "[t]he Agencies neither argue nor prove any harm from an order confirming the

---

[2] Plaintiffs cite the Rule 60(b) motion that Defendants submitted to Judge Pechman in *Northwest Ecosystem* in 2007. (Dkt. No. 111 at 5–6.) Plaintiffs imply that that Rule 60(b) motion shows that the Agencies believe the 2001 ROD is no longer in effect because of the existence of the 2007 RODs. But the Court is vacating the 2007 RODs, which renders irrelevant any such argument.

ORDER
PAGE - 6

legal effect of setting aside the 2007 RODs." (Dkt. No. 111 at 6.) This argument is unavailing because it is Plaintiff—not Defendants—who must show that injunctive relief is appropriate.

In particular, the validity of the ASR processes is not a subject properly before this Court. Those processes were not mentioned in the Complaint and, as Defendants note, any language about the status of the red tree vole would constrain the Agencies' decisionmaking authority going forward.

### C.   Projects Started in Reliance on the Consent Decree

All parties agree that projects begun in reliance on the Consent Decree should not be halted. (Dkt. No. 104 at 8; Dkt. No. 109 at 2–3; Dkt. No. 110 at 20–22.) The Court agrees with the parties' reasoning and concludes that the equities favor allowing projects in the planning stages to continue.

### D.   O & C Act

D.R. Johnson asserts that this Court should mandate that Survey and Manage shall not apply on lands that the BLM administers under the O & C Act. (Dkt. No. 109 at 7.)

"[F]ederal courts should aim to ensure 'the framing of relief no broader than required by the precise facts.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 193 (2000) (internal citation omitted). Here, this Court's order did not involve the O & C Act, and no O & C Act claim was ever asserted in this case. Now that the Court must confront the question of remedies, D.R. Johnson attempts to bring up this complex issue. But this Court's decision—which merely vacates an agency decision that is procedurally faulty and returns the decision to the agency—is not the place for that complicated assessment, particularly where the NEPA violations that this Court described in its Order did not relate to the O & C Act. Equally important, D.R. Johnson relies on *Headwaters v. BLM*, 914 F.2d 1174 (9th Cir. 1990) for legal support. But post-*Headwaters* analyses from this Court and others have suggested that *Headwaters* does not stand for the proposition—as D.R. Johnson appears to suggest it does—that no environmental considerations are relevant on O & C land. *See, e.g.*, *Seattle Audubon Soc'y v.*

*Lyons*, 871 F. Supp. 1291, 1313–14 (W.D. Wash. 1994), *affirmed* 80 F.3d 1401 (9th Cir. 2006).

**III.   CONCLUSION**

For the foregoing reasons, Plaintiff's motion for injunctive relief (Dkt. No. 104) is hereby GRANTED in part and DENIED in part:

1. The 2007 Records of Decision to Remove or Modify the Survey and Manage Mitigation Measure Standards and Guidelines from the Northwest Form Plan (the "2007 RODs") issued by the United States Department of Agriculture and the United States Department of the Interior are hereby VACATED.
2. This matter is REMANDED for further proceedings.
3. The Agencies may proceed developing and implementing projects under the terms of the 2011 Consent Decree for projects that fall within one or more of the following categories of projects: (1) projects in which any Survey and Manage pre-disturbance survey(s) has been initiated (defined as at least one occurrence of actual in-the-field surveying undertaken according to applicable protocol) in reliance upon the Consent Decree on or before April 25, 2013; (2) projects, at any stage of project planning, in which any known site(s) (as defined by the 2001 Record of Decision) has been identified and has had known site-management recommendations for that particular species applied to the project in reliance upon the Consent Decree on or before April 25, 2013, and (3) projects, at any stage of project planning, that the Agencies designed to be consistent with one or more of the new exemptions contained in the Consent Decree on or before April 25, 2013.

//
//
//
//

1  DATED this 18th day of February 2014.

_[signature]_

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 9